UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL CAMPBELL,

    Petitioner,

-vs-                                                                                      Case No. 8:15-cv-18-T-36TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Before the Court are Petitioner's amended petition for a writ of habeas corpus (Dkt. 5), Respondent's opposition (Dkt. 6), and Petitioner's reply (Dkt. 11). Upon consideration, the amended petition will be DENIED.

## I. PROCEDURAL HISTORY AND BACKGROUND

Petitioner, a Florida prisoner, was convicted of trafficking in 28 grams or more but less than 200 grams of cocaine, trafficking in 14 grams or more but less than 28 grams of a controlled substance, possession of drug paraphernalia, and reckless driving (Respondent's Ex. 6). His appeal was affirmed (Respondent's Ex. 12). He thereafter filed a motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure, asserting that trial counsel was ineffective 1) in failing to file a motion to suppress his videotaped statement on the ground that his *Miranda* rights were violated,[1] and 2) in conceding guilt without his consent (Respondent's Ex. 13). After an evidentiary hearing (Respondent's Ex. 17), the state post-conviction court denied Petitioner's Rule

---

[1]*See Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (prior to questioning, a suspect must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.").

3.850 motion (Respondent's Ex. 20). The denial of the motion was affirmed on appeal (Respondent's Ex. 24).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the

'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient

3

performance prejudiced the defense.[2] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III. ANALYSIS

In his sole claim for relief, Petitioner contends that trial counsel was ineffective in failing to file a motion to suppress his videotaped interrogation and confession on the ground that he did not

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

knowingly waive his *Miranda* rights.[3] He asserts that after Detective Warren read him the *Miranda* warning, he asked Warren whether, if he cooperated, his responses could be used against him, and Warren never answered that question. Warren instead threatened him with an arrest for drug trafficking and stated "So we're going to go over this, and then we're going to get into what I want to get into, as far as this other party we were talking about earlier, okay?" Petitioner thereafter answered Warren's questions.

Petitioner states that his trial counsel viewed the videotaped statement, failed to file a motion to suppress, and admitted during the state post-conviction evidentiary hearing that her failure to move to suppress was an "oversight" since, in her opinion, Petitioner did not waive his *Miranda* rights.[4]

After the evidentiary hearing, the state post-conviction court rejected Petitioner's claim that counsel was ineffective in failing to move to suppress his videotaped statement, determining that Petitioner had failed to establish prejudice because there had been a valid waiver of rights and a motion to suppress would have been denied, and there was no reasonable probability that the outcome of his trial would have been different had the videotaped interrogation been suppressed:

> After carefully reviewing the video recording of the Defendant's interrogation by law enforcement, the Court finds that the Defendant did not suffer any prejudice as a result of Ms. Mederos-Jacobs' failure to file a motion to suppress the statements made by the Defendant during that interrogation. While discussing his right to remain silent with the detective, the Defendant clearly acknowledged that he understood the

---

[3] Defense counsel filed a motion to suppress the evidence (drugs and drug paraphernalia) found in Petitioner's car on the ground that there was an improper warrantless search incident to arrest (Respondent's Ex. 2). She did not, however, move to suppress the videotaped statement.

[4] The court notes that trial counsel's concession during the evidentiary hearing that she should have filed a motion to suppress the videotaped statement is not dispositive of this claim. *See Chandler v. United States*, 218 F.3d 1305, 1315 n. 16 (11th Cir. 2000) (because the ineffective assistance inquiry is objective, counsel's post-conviction admission of deficient performance "matters little"); *Walls v. Bowersox*, 151 F.3d 827, 836 (8th Cir. 1998) (trial counsel's concession of ineffectiveness not dispositive).

5

videotape of the interrogation, and the statements he made during that interrogation, could be used against him in court. Additionally, the Court finds that the Defendant did not invoke his right to remain silent simply by failing to respond verbally when the detective read the Defendant each of his rights prior to questioning. The Court finds that the Defendant knowingly and voluntarily waived his right to remain silent when he continued to speak to the detective during his videotaped interrogation after being read his Miranda rights; therefore, the Defendant was not prejudiced by Ms. Mederos-Jacobs' failure to file a motion to suppress that would not have been granted.

Moreover, the Court finds that it is not reasonably likely that the outcome of the Defendant's trial would have been different, but for the alleged deficient performance of Ms. Mederos-Jacobs in failing to file a motion to suppress the Defendant's videotaped confession. Even assuming that Ms. Mederos-Jacobs would have succeeded in having the statements made by the Defendant during his videotaped interrogation suppressed from evidence, the jury was still presented with overwhelming evidence of the Defendant's guilt during the Defendant's trial. At trial, the State presented testimony from four different law enforcement officers, each of whom testified with respect to the illegal narcotics found in the Defendant's vehicle on the night of his arrest, and the circumstances leading to the Defendant's arrest. Additionally, the State presented testimony from witness Michael M. Healy, a forensic chemist employed by the Manatee County Sheriff's Office, regarding the weight and chemical composition of the illegal narcotics found in the Defendant's vehicle.

At the evidentiary hearing on the Defendant's Motion, the Defendant's attorney argued that the suppression of the Defendant's statements made during his videotaped interrogation would have left the State with a much weaker case against the Defendant, based solely on constructive possession. The Defendant's argument, however, is unpersuasive. It is clear from the testimony offered by the State's witnesses at trial that the physical evidence ultimately relied on to convict the Defendant was found in the drivers' side floorboard of the Defendant's truck, immediately after the Defendant exited his vehicle and attempted to flee on foot. Additionally, it is clear that the Defendant was the only person in the vehicle at the time he exited the vehicle and attempted to flee from law enforcement.

Finally, Detective Justin Warren testified at trial that the Defendant made additional incriminating statements during a roadside interview, after the Defendant was read his Miranda rights, acknowledging that the illegal narcotics belonged to him. It is clear from the defendant's present Motion that he is not asserting that he received ineffective assistance of counsel because Ms. Mederos-Jacobs failed to file a motion to suppress his roadside statements to Detective Warren. Therefore, even if Ms. Mederos-Jacobs had been successful in having the statements made by the Defendant during his videotaped interrogation suppressed from evidence, the Defendant's roadside statements would still have been presented to the jury during the Defendant's trial, via Detective Warren.

6

> For the foregoing reasons, the Court finds that the Defendant did not suffer any prejudice as a result of Ms. Mederos-Jacobs' failure to file a motion to suppress the statements made by the Defendant during his videotaped interrogation by law enforcement. Therefore, Ground One of the Defendant's Motion for Postconviction Relief will be denied.

(Respondent's Ex. 20, pp. 6-8).

"[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession." *Jackson v. Denno*, 378 U.S. 368, 376 (1964). "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." *Leon v. Wainwright*, 734 F.2d 770, 772 (11th Cir. 1984) (internal quotation marks omitted).

> In determining whether the waiver of the privilege against self-incrimination is voluntary:
>
> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quotation marks and citation omitted).

Petitioner raises no challenge to the validity of the *Miranda* warnings given to him. Rather, he appears to claim that his videotaped statement was involuntary because his waiver of his right to remain silent was not knowing, since it was not made with full awareness of the consequences of his decision to waive that right.

The trial transcript reveals that Detective Warren read each *Miranda* warning to Petitioner (Respondent's Ex. 5, Vol. I, p. 144-45). Thereafter, the following exchange between Detective Warren and Petitioner took place:

7

Q. Having these rights in mind, do you wish to talk to me now?

A. (Inaudible) I got a question.

Q. Yes, you want to cooperate?

A. I got a question.

Q. Well, we have to deal with that question first.

A. (Inaudible)

Q. Okay, what's your question?

A. That thing you said, that you said anything I say can be used against me in a court of law?

Q. Right now this is a criminal investigation, okay?

A. Okay. So that means by me necessarily cooperating with you, you guys can turn around and use that on me in court?

Q. Anything you say can be used, okay. That's what it's saying, all right? (Unintelligible) let me read it again, okay.

A. Yeah, no, I understand it.

Q. That way there's no misrepresentation, I'm misinterpreting something or you don't understand. You understand all that, right?

A. Yeah, I understand what you're saying, but you --

Q. No, I understand what you're asking.

A. But by me cooperating, then –

Q. Right.

A. If, when I go to court, it turns around and like oh, here's the videotape that says that he did this and he did that, you know what I'm saying?

Q. Here's the thing.

A. (Inaudible) cooperating, not even worth it. If you guys use it – you know what I'm saying?

8

(*Id*., pp. 145-46).

Petitioner contends that "he never received an answer to his question whether, if he cooperated, his responses could be used against him in court." (Dkt. 11, p. 6). The court disagrees. When Petitioner first asked "So that means by me necessarily cooperating with you, you guys can turn around and use that on me in court?" Detective Warren answered "Anything you say can be used, okay. That's what it's saying , all right?" Therefore, Detective Warren did answer Petitioner's question whether his cooperation could be used against him. And when Detective Warren offered to again read the *Miranda* warning, Petitioner responded "Yeah, no, I understand it."

Petitioner's subsequent comment that "If when I go to court, it turns around and like oh, here's the videotape that says that he did this and he did that, you know what I'm saying?. . .(Inaudible) cooperating, not even worth it. If you guys use it - you know what I'm saying?" was in the nature of a rhetorical question rather than a question seeking an answer. His comment can reasonably be interpreted as an attempt to make a point that it was not worth cooperating (since his cooperation could be used against him) rather than an attempt to get an answer to his previously answered question regarding whether his cooperation could be used against him. Despite Petitioner's comment, he elected to waive his right to remain silent by answering Detective Warren's questions (*Id*., pp. 147-55).

Petitioner likewise did not invoke his right to remain silent simply by failing to audibly respond when Detective Warren read him each of his rights and asked if he understood those rights. Despite Petitioner's assertion that he did not respond after Detective Warren asked "do you understand that?" after Detective Warren read each *Miranda* warning, the record reflects that he nodded his head after several of the warnings (Respondent's Ex. 17, p. 21). "The prosecution . . . does not need to show that a waiver of *Miranda* rights was express." *Berghuis*, 560 U.S. at 384.

Rather, a waiver of *Miranda* rights "can be clearly inferred from the *actions* and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (emphasis added). *See also United States v. Smith*, 218 F.3d 777, 780, 781 (7th Cir. 2000) (inferring implicit *Miranda* waiver, despite accused's refusal to sign waiver form, where she nodded her head after being advised of her rights, never asked for an attorney, and immediately began talking). Moreover, Petitioner was required to "unambiguously and unequivocally" invoke his right to remain silent if he wanted Detective Warren's questioning to stop. *Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1192 (11th Cir. 2012) ("'a defendant who wishes to invoke his right to remain silent must do so 'unambiguously' and 'unequivocal[ly].'") (quoting *Davis v. United States*, 512 U.S. 452, 458-62 (1994) (alteration in original)).

Finally, the state post-conviction court reasonably found that there was no reasonable probability that the outcome of the trial would have been different had the videotaped interrogation been suppressed. The proof that the State elicited against Petitioner at trial was strong. Four police officers testified that numerous drugs and drug paraphernalia were discovered in several areas of Petitioner's vehicle (including on the floorboard of the driver's side where Petitioner had been) immediately after he exited the vehicle and attempted to flee (Respondent's Ex. 5, Vol. I, pp. 139-238). And immediately after being arrested and read his *Miranda* rights, Petitioner admitted to Detective Warren that he had purchased the drugs, and stated how much they cost (*Id.*, p. 142). Petitioner's contention that "the alleged unrecorded earlier admission was a post-hoc fabrication of the officer making that claim" (Dkt. 11, p. 13) is purely self-serving and unsupported by any evidence. Merely because the statements were not recorded (since they were made immediately after the arrest on the roadside) and not referenced during the subsequent videotaped interrogation does not imply, let alone establish that Detective Warren's testimony regarding Petitioner's roadside statements was

a fabrication.

Considering the totality of the circumstances, this Court finds that Petitioner understood his *Miranda* rights and knowingly and voluntarily waived those rights, and that the statements he made after the waiver were voluntary. Moreover, even if counsel had successfully moved to suppress Petitioner's videotaped statements, Petitioner has not demonstrated a reasonable probability that the outcome of the trial would have been different. Accordingly, the state post-conviction court's determination that Petitioner suffered no prejudice from counsel's failure to move to suppress the statements is neither contrary to *Strickland,* nor based on an unreasonable determination of the facts. Petitioner's claim therefore does not warrant relief.

Any claims not specifically addressed in this Order have been determined to be without merit.

It is therefore **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Dkt. 5) is **DENIED**.

2. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

3. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[5] Accordingly, a Certificate of Appealability is **DENIED** in this case. And because Petitioner is not entitled to a Certificate of Appealability, he is not entitled to proceed on appeal *in forma pauperis*.

---

[5]The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. See Rule 11 of the Rules Governing Section 2254 Cases In the United States District Courts.

**DONE AND ORDERED** in Tampa, Florida on February 16, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copy to: Counsel of record